### INTERSTATE COMMERCE COMMISSION, Plaintiff,

v.

### KSI FARM LINES CO–OP, INC., et al., Defendants.

### No. 74–C–503.

United States District Court, ·E. D. Wisconsin.

Feb. 13, 1976.

146

Edward D. Greenberg, Regional Counsel, I. C. C., Chicago, Ill., Miles L. Kavaller, Asst. Regional Counsel, Los Angeles, Cal., for plaintiff.

Edward G. Finnegan, Kvistad & Finnegan, Chicago, Ill., for defendants.

## DECISION AND ORDER

WARREN, District Judge.

This action was commenced by the filing of a complaint on October 30, 1974, charging that defendant KSI Farm Lines Co-op, Inc. (hereinafter "KSI"), acting under the direction of, aided and abetted by, and participated in by the remaining defendants, conducted a for-hire transportation operation in interstate commerce without authority from the Interstate Commerce Commission (hereinafter the "Commission"), in violation of sections 203(c), 206(a), or 209(a) of Part II of the Interstate Commerce Act (hereinafter the "Act"), 49 U.S.C. §§ 303(c), 306(a) and 309(a), respectively. The complaint further charges that defendant KSI, in concert with the remaining defendants, failed to submit its records pertaining to motor vehicle transportation to Commission representatives in violation of sections 220(d) and (g) of the Act, 49 U.S.C. §§ 320(d) and 320(g). Inasmuch as the complaint seeks permanent injunctive relief with regard to both of the above charges pursuant to section 222(b)(1) of the Act, 49 U.S.C. § 322(b)(1), a hearing on the Commission's motion for preliminary injunction, likewise filed herein on October 30, 1974, was consolidated with an advanced trial on the merits, as authorized by Rule 65(a)(2) of the Federal Rules of Civil Procedure, which hearing transpired on April 10, April 16, and June 24, 1975. Thereafter, briefs were filed by all parties.[1] The instant decision enumerates

---

1. Defendants have, in the body of their post-trial brief, requested oral argument on the matters advanced therein. Rule 6.01 of the Rules of the United States District Court for the Eastern District of Wisconsin provides that "[e]ach judge shall follow his own practice with respect to the affording of oral argu-

ment." Although in this Court, oral argument is usually accorded upon request, the Court perceives no such need at this juncture inasmuch as the Court allowed extensive argument during the course of trial on the same issues now before it.

this Court's findings of fact and conclusions of law on the matters tried, in accord with Rule 52(a) of the Federal Rules of Civil Procedure.

## FACTUAL FINDINGS

It is undisputed that defendant KSI is a Wisconsin corporation, formed under the Agricultural Cooperative Act of the State of Wisconsin and chartered on July 9, 1973. It claims to be an agricultural cooperative association and has a mailing address of Rural Route 2, Box 659, Kenosha, Wisconsin. Defendant KSI was formed at the instance of defendant Jerry Seidman whose immediate concern was maintenance of the productive operation of some 25 pieces of motor vehicle equipment following Commission denial of an application for temporary operating authority. KSI does not deal in farm products or farm supplies but performs transportation as a for-hire carrier by motor vehicle in interstate commerce. Although the incorporation of the cooperative was finally accomplished on July 9, 1973, a Form BOp 102 (Notice to Commission of Intent to Perform Interstate Transportation for Certain Nonmembers Under Section 203(b)(5) of the Interstate Commerce Act) was filed with the Commission on July 1, 1973, upon which, as defendant Jerry Seidman had been forewarned, the Commission initiated the investigation which precipitated this action. KSI thereafter commenced actual operation in October, 1973.

At the time of incorporation, the officers of the defendant KSI Farm Lines consisted of defendants Jerry Seidman, Ralph Welter, Harry A. Seidman and George Haworth, who occupied the offices of president, vice president, treasurer, and secretary, respectively. These men occupied the same positions at the time of trial with the exception of George Haworth, who was no longer associated with the corporation. The other incorporators and directors of KSI, each of whom is a named defendant in this action, consisted of Dennis F. Bell, Russell L. Ryndners, and Ray Wade.

Defendant Jerry Seidman, president of KSI, resides at 12400 Wilmot Road, Ke-

nosha, Wisconsin, and is possessed of an extensive background in motor freight transportation. His full-time occupation consists of the management of the daily operations of defendant KSI. Dennis F. Bell resides at 9461 River Road, Kenosha, Wisconsin. He owns 13 acres of land upon which he raises cattle but is employed in a full-time capacity as a pipefitter for Abbott Laboratories in North Chicago, Illinois. He has used the cooperative only once to transport a few head of livestock to Union Grove, Wisconsin, for slaughter.

Russell L. Ryndners resides at 9009 River Road, Kenosha, Wisconsin. He owns three acres of land on which he raises corn but is likewise employed elsewhere on a full-time basis and in that capacity works as a plasterer for the Don T. Vain Co., Kenosha, Wisconsin. Mr. Ryndners has not used the cooperative for transportation of any of his farm products. Defendant Ray Wade resides in Iron River, Wisconsin. In June of 1973, Wade sold 44 acres of farm land in Union Grove, Wisconsin to Harry and Annette Seidman, after which he maintained no involvement with defendant KSI.

Defendant George Haworth, at the time the cooperative was formed, became its employee and performed general office work. He was never engaged in any farming activity. Defendant Harry A. Seidman is the son of Jerry Seidman and resides at 1558 30th Avenue, Kenosha, Wisconsin. He possesses a joint interest in the 44 acre plot of land in Union Grove purchased from defendant Ray Wade. The crops on the land at the time of purchase remained the property of Ray Wade, and since that time, Harry Seidman has used the transportation services of the cooperative on only two occasions, neither of which amounted to a truck-load shipment. He is presently employed as one of the three dispatchers for KSI and is no longer a farmer.

In August, 1973, Harry and his mother, Annette Seidman, with whom he jointly owns the 44 acre plot purchased from Ray Wade, leased 40 of their acres

to defendant Ralph Welter, who now resides thereon. Mr. Welter sharecrops corn and winter wheat but raised no crops in 1973 and has not used the facilities of KSI to ship any of his produce.

Defendant KSI Farm Lines Co-op, Inc. owns no motor vehicle equipment but leases such equipment on a long-term basis from Koral Sales, Inc., a corporation whose stock is wholly apportioned among the members of the Seidman family as follows: Jerry Seidman, 51 percent; Annette Seidman, his wife, 44 percent; and Harry A. Seidman, their son, 5 percent. The motor vehicle equipment owned by Koral Sales, Inc. in 1973 consisted of 12 units. At the time of trial, however, Koral Sales, Inc. owned 47 truck-tractors and 53 specially-equipped refrigerator trailers, for the lease of which to defendant KSI it receives approximately 60 percent of the revenues paid to KSI.

As a corporate entity, KSI is governed by certain by-laws of which the second enumerates the qualifications for membership in the corporation, the acceptance of members, and the termination of members. In particular, the by-laws provide that "natural persons, partnerships, unincorporated associations and corporations" are eligible for membership in the cooperative if: (1) they are producers of agricultural commodities as owners or operators of farms; (2) they purchase a membership in the cooperative; (3) their location is such that it is economically sound for the cooperative to have them as members, and (4) they patronize the cooperative with regular agricultural commodity hauling. All members, according to the by-laws, must be accepted by the board of directors, and any member would "automatically cease to be a member and lose the right to vote" in the cooperative when it ceased to meet any of the aforementioned qualifications, which determination is likewise vested in the board of directors. As a matter of fact, however, no formal membership meetings have been held. In addition, Jerry Seidman receives no instructions from the board of directors concerning the manner in which KSI is operated, nor are suggestions in that regard solicited or received from the membership.

Although defendant KSI claims that some 43 "persons, partnerships, unincorporated associations and corporations" constitute its membership, there are in fact only 16 entities of record for whom KSI, incident to the investigation commenced herein by the Commission, produced a membership application or fee receipt. These included National Tea Company, the Auster Company, Natcol Craft, Inc., the Perolin Company, Universal Foods Corp., Ocean Spray Cranberries, Inc., Landon Company, Inc., Lee Wards, Applied Biochemists, Chicago Metallic Corp., Mr. Dale Presloski, Kennett Canning Company, Texas Citrus Exchange, Mr. Donald Hendzel, Mr. Donald E. Dobbins and Central Valley Hide Company. Nor is the claim of 43 members substantiated by the membership list of defendant KSI, introduced and admitted into evidence as Defendants' Exhibit 1. In addition to the entities heretofore enumerated, defendants' membership list names only the individuals George Haworth, Harry Seidman, Dennis Bell, Russell Rynders, Ralph Welter and Ray Wade, the incorporators, and the persons or entities, Sunkist Growers, Tree Sweet, Jewel Tea Co., Paul Bertuccio, Central Growers, Robert Colwell, De Bruyn Produce Company, and K-Tel Intentional, Inc. Of all of the entities enumerated above, Lee Wards, Chicago Metallic Corporation, Natcol Crafts, Inc., Applied Biochemist, and the Perolin Company were not and are not farmers or entities engaged in agricultural production and are not, therefore, qualified members of an agricultural cooperative. Likewise, Jewel Tea Company, by the admission of its vice president of traffic and transportation, Mr. Frank Daleiden, is not a member of the KSI cooperative in that it never filed a membership application or paid a membership fee upon the advice of its own counsel that it was not qualified to become a member of an agricultural cooperative.

The revenues received by defendant KSI for the performance of its transportation services on behalf of its customers were maintained in an accounting ledger for the period from October 1, 1973 through March 31, 1975, a copy of which ledger was admitted into evidence at trial as Plaintiff's Exhibit 8. In addition, other revenue to KSI during that time period was reflected in a comparison of the transportation invoices listed on Plaintiff's Exhibit 9 with those logged in Plaintiff's Exhibit 8. These documents disclose total revenue accruing to defendant KSI in the amount of $3,105,-057.52. Of that amount, $1,218,308.51 in revenue was derived from customers whom KSI had designated as nonmembers as well as from the transportation of exempt commodities for entities which were not members of KSI; revenues in the amount of $533,091.27 were obtained from customers for whom no membership applications or fee receipts were produced by KSI; $567,126.55 constituted the amount of revenues derived from the transportation of commodities for nonmember Jewel Tea Company; revenues in the amount of $430,931.12 were derived from Lee Wards, Chicago Metallic Corporation, Natcol Crafts, Inc., Applied Biochemists, and the Perolin Company, which entities were not qualified members of the agricultural cooperative, and the amount of $345,619.66 was derived from the transportation of commodities which were wholly unrelated to that portion of a member's business which involved farming or agricultural production. Included in the latter category are $79,155.72 in revenues obtained from the National Tea Company for transportation of fresh vegetables and produce which were not products of its farms but purchased from sources in California and transported to the midwest, $132,371.18 in revenues derived from transportation for Universal Foods of food stuffs which were not related to its production of chili peppers, for which it owns and operates a farm, $3,748.00 in revenues derived from transportation on behalf of Landon Company of manufactured or prepared pet food which is produced by no farm owned by Landon Company, and $10,400 in revenues derived from K-Tel International, Inc. for the transportation of phonograph records. The remaining $9,980.41 is derived from qualified member traffic.

There exists no evidence, however, of any revenues derived from Messrs. Bell, Rynders, Harry Seidman, Wade or Welter, the incorporator-director members, for transportation performed on their behalf nor any evidence of revenues attributable to members Donald Hendzel, Dale Presloski, Donald Dobbins or Texas Citrus Exchange.

As to the issue of the defendant's failure to submit records pertaining to KSI motor vehicle transportation to Commission representatives, the evidence discloses that District Supervisor John Ryden requested a panoply of KSI records, including freight bills, bills of lading, accounts receivable journals, membership applications and fee payments. In response, he received bills of lading, accounts receivable for October and November, 1973, the articles of incorporation and by-laws partial membership lists and a sample membership application. Although there was considerable difficulty in obtaining such records and although not all requested records were submitted to the ICC, this Court finds as a matter of fact that such difficulty and the failure of submission were due in large measure to the diverse locations of the records and the inability of defendant Jerry Seidman to immediately ascertain their location as well as to the confusion on the part of Jerry Seidman and his attorney, Joseph Madrigrano, Jr., as to the nature of the documents sought. In view of this finding, however, defendants will not be heard to complain that there exist other documents, membership applications in particular, which were not forwarded to the plaintiff because not requested. As to those "members" for whom no application or fee receipt was submitted by defendants, this Court finds that such entities are not in fact members of defendant KSI.

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and of the subject matter of this action by virtue of the provisions of Part II of the Interstate Commerce Act, particularly Section 222(b) thereof, 49 U.S.C. § 322(b), and under the general laws and rules relating to suits in equity arising under the Constitution and the laws of the United States.

Essentially, sections 203(c), 206(a) and 209(a) of Part II of the Interstate Commerce Act, 49 U.S.C. §§ 303(c),[2] 306(a)(1)[3] and 309(a)(1),[4] respectively, proscribe any for-hire motor vehicle transportation business, common carrier or contract carrier business in interstate commerce without authority from the Interstate Commerce Commission. Cooperative associations, however, as those entities are defined in the Agricultural Marketing Act, are exempted from such authorization requirement:

"(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include . . . (5) motor vehicles controlled and operated by a cooperative association as defined in the Agricultural Marketing Act, approved June 15, 1929, as amended, or by a federation of such cooperative associations, . . . but any interstate transportation performed by such a cooperative association or federation of cooperative associations for nonmembers who are neither farmers, cooperative associations, nor federations thereof for compensation, except transportation otherwise exempt under this chapter, shall . . . in no event exceed 15 per centum of its total interstate transportation services in any fiscal year, measured in terms of tonnage: . . . *Provided further*, that any such cooperative association . . . which performs interstate transportation for nonmembers . . ., except transportation otherwise exempt under this chapter, shall notify the Commission of its intent to perform such transportation prior to the commencement thereof . . .." 49 U.S.C. § 303(b).

The term "cooperative association" is defined by the Interstate Commerce Commission, by virtue of the Commission's authority to prescribe regulations incident to its administration of the provisions of the Act, which authorization is contained in 49 U.S.C. § 304(a)(6), to include any "association which conforms to the definition in the Agricultural Marketing Act." Conversely, any association which does not conform to that defined

---

2. "(c) Except as provided in section 302(c) of this title, subsection (b) of this section, in the exception in subsection (a)(14) of this section, and in the second proviso in section 306(a)(1) of this title, no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation, nor shall any person engaged in any other business enterprise transport property by motor vehicle in interstate or foreign commerce for business purposes unless such transportation is within the scope, and in furtherance, of a primary business enterprise (other than transportation) of such person. . . ."

3. "(a)(1) Except as otherwise provided in this section and in section 310a of this title, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operations on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations . . .."

4. "(a)(1) Except as otherwise provided in this section and in section 310a of this title, no person shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway or within any reservation under the exclusive jurisdiction of the United States unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business . . .."

in the Agricultural Marketing Act is not eligible to operate under the partial exemption contained in section 203(b)(5) of the Act, 49 U.S.C. § 303(b)(5), heretofore quoted. *See* 49 C.F.R. § 1047.20(a). In that respect, the Agricultural Marketing Act of 1929 restricts the meaning of "cooperative association" as follows:

"(a) As used in this subchapter, the term 'cooperative association' means any association in which farmers act together in processing, preparing for market, handling, and/or marketing the farm products of persons so engaged, and also means any association in which farmers act together in purchasing, testing, grading, processing, distributing, and/or furnishing farm supplies and/or farm business services: *Provided, however,* That such associations are operated for the mutual benefit of the members thereof as such producers or purchasers and conform to one or both of the following requirements:

"First. That no member of the association is allowed more than one vote because of the amount of stock or membership capital he may own therein; and

"Second. That the association does not pay dividends on stock or membership capital in excess of 8 per centum per annum.

"And in any case to the following:

"Third. That the association shall not deal in farm products, farm supplies, and farm business services with or for nonmembers in an amount greater in value than the total amount of such business transacted by it with or for members. All business transacted by any cooperative association for or on behalf of the United States or any agency or instrumentality thereof shall be disregarded in determining the volume of member and nonmember business transacted by such association." 12 U.S.C. § 1141j(a).

The Commission has, in addition, incident to its 49 U.S.C. § 304(a)(6) authori-

ty, delineated that the term "member" means "any farmer or cooperative association which has consented to be, has been accepted as, and *is a member in good standing in accordance with the* constitution, *bylaws,* or rules of the cooperative association," 49 C.F.R. § 1047.-20(c) (emphasis added), and that by the term "farmer" is meant "any individual, partnership, corporation, or other business entity *to the extent engaged in farming operations either as a producer of agricultural commodities or as a farm owner,*" 49 C.F.R. § 1047.20(d) (emphasis added). Furthermore, the Commission has confined "member transportation" to that transportation performed by a cooperative association for itself or for its members, *exclusive of* transportation performed in furtherance of the "nonfarm" business of such members. 49 C.F.R. § 1047.20(f). Any other transportation performed by the cooperative association is classified for purposes relevant hereto as "nonmember transportation." 49 C.F.R. § 1047.20(g).

In light of the definition of agricultural cooperative embodied in the Agricultural Marketing Act of 1929 and the various regulations promulgated by the Commission, this Court concludes as a matter of law that defendant KSI does not constitute a *bona fide* agricultural cooperative and is thus not entitled to the partial exemption provided by section 203(b)(5) of the Act, 49 U.S.C. § 303(b)(5).

The facts, as heretofore enumerated by this Court, disclose that defendant KSI is solely engaged in the performance of transportation as a for-hire carrier by motor vehicle in interstate commerce. As such, its concern is the provision of a service as opposed to the provision of farm products or farm supplies. As noted in *I.C.C. v. Southwest Marketing Association,* 315 F.Supp. 805, 808 (N.D.Tex., 1970), however, in order to be accorded the exemption embodied in 49 U.S.C. § 303(b)(5) on such a basis, the cooperative association "must control and operate the vehicles, must be an association of farmers operated for their

mutual benefit as producers, such transportation must be a farm business service, and the association must meet the third requirement of said Section 1141j." The activities of the cooperative association, e. g., transportation in the instant case, must remain a cooperative effort by the members for their mutual benefit. *Agricultural Transportation Association of Texas v. United States*, 274 F.Supp. 528, 535 (N.D.Tex., 1967). Many of these criteria, however, and in particular the latter, are lacking herein. The evidence demonstrates that the defendant KSI was organized by Jerry Seidman in order to maintain the productive operation of his vehicles or, more particularly, the vehicles of an entity wholly owned by his immediate family. None of the vehicles are owned by KSI. Furthermore, the incorporators consisted of persons marginally associated with farming, some of whom are no longer associated with KSI and most of whom have never used the services of the cooperative. In addition, defendant KSI is operated wholly within the discretion of Jerry Seidman, there having been no instructions in that regard issued by the board of directors nor suggestions solicited from the membership. In fact, a formal membership meeting has never transpired. On the basis of the foregoing, this Court concludes that defendant KSI was "plainly . . . neither farmer-inspired, farmer-financed, nor farmer-dominated in its preorganization and early post-organization periods," *see, e. g., Agricultural Transportation Assn. of Texas, et al. Investigation of Operations*, 102 M.C.C. 527, 540 (1966), aff'd., *Agricultural Transportation Assn' of Texas v. U. S., supra,* and is not an organization which

was formed by or managed and controlled for the mutual benefit of its farmer members, in compliance with the basic requirement of 12 U.S.C. § 1141j as delineated in the "declaration of policy," 12 U.S.C. § 1141.[5]

Nor do the operations of defendant KSI comply with the third proviso of 12 U.S.C. § 1141j(a). Under section 1141j(a), KSI is permitted to engage in transportation for nonmembers to the extent that revenues therefrom do not exceed the revenues derived from member traffic. In accord with the regulations promulgated by the Commission, member traffic is essentially that transportation performed by the cooperative for a producer of agricultural commodities or a farm owner, corporate or otherwise, which producer or owner has consented to be, has been accepted as, and is a member in good standing under the by-laws of the cooperative, exclusive of transportation performed in furtherance of the "nonfarm" business of a cooperative member. As heretofore noted, any other transportation performed by the cooperative association must be classified as "nonmember" transportation.

■ That being the law, the facts unequivocally disclose that the nonmember revenues of defendant KSI substantially exceeded its member revenues. Of total revenues in the amount of $3,105,057.52, $1,218,308.51 were derived from customers whom KSI had designated as nonmember as well as from the transportation of exempt commodities for nonmember entities. These must be regarded as nonmember transportation. Similarly, revenues derived from customers for whom there exists no membership appli-

---

5. 12 U.S.C. § 1141(a)(3) provides:

"(a) it is declared to be the policy of Congress to promote the effective merchandising of agricultural commodities in interstate and foreign commerce so that the industry of agriculture will be placed on a basis of economic equality with other industries, and to that end to protect, control, and stabilize the currents of interstate and foreign commerce in the marketing of agricultural commodities and their food products—

"(3) by encouraging the organization of producers into effective associations or corporations *under their own control* for greater unity of effort in marketing and by promoting the establishment and financing of a farm marketing system of producer-owned and producer-controlled associations and other agencies." (Emphasis added).

cation or fee receipt to indicate compliance with the KSI by-laws or revenues derived from Jewel Tea Company, which never applied for or consented to membership, must be classified as derived from nonmember traffic. Likewise, revenues derived from transportation of commodities for non-qualified members such as Lee Wards, Chicago Metallic Corporation, Natcol Crafts, Inc., Applied Biochemists, and the Perolin Company, which members are neither producers of agricultural commodities or farm owners, must be excluded in tabulating revenues derived from member traffic, as well as any revenues derived from the transportation of commodities which were wholly unrelated to that portion of a member's business which involved farming or agricultural production. Having excluded the various revenues attributable to the foregoing entities, there remains but $9,980.41 which is derived from qualified member traffic. In view of these facts, the Court concludes that defendant KSI is not operating within the provisions of the Agricultural Marketing Act, in particular the third proviso of 12 U.S.C. § 1141j(a), and is thus not within the partial exemption embodied in 49 U.S.C. § 303(b)(5). Accordingly, a permanent injunction as prayed for by plaintiff Interstate Commerce Commission will issue. Moreover, as concerns defendants' plea that this Court refrain from enjoining their activity until such time as KSI restructures its membership in deference to defendants' imminent financial losses, this Court chooses to advance the option suggested in *Agricultural Transp. Ass'n of Texas v. U. S., supra* at 537:

" . . . A true cooperative association, existing for the mutual benefit of its members, need not be dependent for its sustenance upon the activities in which [KSI] has been engaged. If [defendants] cannot cease such activities without suffering a severe loss of operating ability, the time is ripe for [them] to obtain a certificate of public convenience and necessity."

As a final matter, in view of the fact that this Court has found no willful evasion of compliance with the Commission directive to defendants to relinquish for inspection certain records of KSI, but only a delay in production occasioned by defendants' confusion, this Court declines to find as a matter of law any violation by defendants of section 220(g) of the Interstate Commerce Act, 49 U.S.C. § 320(g).

It appearing, however, that defendant KSI Farm Lines Co-op, Inc., under the direction of, aided and abetted by, and participated in by defendants Koral Sales, Inc., Jerry Seidman, Harry Seidman, George Haworth, Dennis F. Bell, Russell L. Rynders, Ralph Welter and Ray Wade, has conducted a for-hire transportation operation in interstate commerce without authority from the Interstate Commerce Commission, and it further appearing that said defendants will continue such practices unless restrained,

Now therefore, it is ordered that the defendant KSI Farm Lines Co-op, Inc., its agents, employees and representatives, and all persons, firms, companies and corporations, and their respective officers, agents, servants, employees and representatives, in active concert or participation with them, be permanently enjoined and restrained from, in any manner or by any device, directly or indirectly, transporting or holding themselves out to transport property, other than exempt and nonregulated commodities, in interstate or foreign commerce by motor vehicle, for compensation, on public highways as a for-hire, common, or contract carrier by motor vehicle, unless and until such time, if at all, as there is in force with respect to said defendant a certificate of public convenience and necessity, or a permit issued by the Interstate Commerce Commission authorizing such transportation, and that defendants Koral Sales, Inc., Jerry Seidman, Harry Seidman, George Haworth, Dennis F. Bell, Russell L. Rynders, Ralph Welter, and Ray Wade be permanently enjoined and restrained from acting in concert,

aiding and abetting or participating with said KSI Farm Lines Co-op, Inc. in the performance of subject business and transportation.

Let judgment be entered accordingly.